**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WILLIAM ARTHUR YATES,**

      **Petitioner,**

**v.**                                **Civil Action No. 1:19cv65**
                                            **(Judge Kleeh)**

**CHRISTOPHER GOMEZ, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. Background

On March 25, 2019, the *pro se* petitioner, an inmate at FCI Morgantown, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, along with a Motion in Request and in Support for Expedited Proceedings.  ECF Nos. 1, 2.   Pursuant to a Notice of Deficient Pleading, on April 12, 2019, Petitioner paid the five-dollar filing fee.  ECF No. 6.

On April 17, 2019, the Court made a preliminary review of the petition and found that summary dismissal of the same was not warranted.  Accordingly, the Warden was directed to show cause why the writ should not be granted and the Clerk was directed to correct the spelling of Respondent's name on the docket. ECF No. 7. On May 16, 2019, Respondent moved for permission to file one day out of time, attaching a copy of its dispositive motion, a memorandum in support, and exhibits. ECF No. 9. The motions and memorandum inadvertently cited to the wrong case number in the style of the case. Id. The Clerk of Court advised the Respondent of its error.  Accordingly, on May 20, 2019, Respondent filed a Corrected Motion for Permission to File Response One Day Out of Time. ECF No. 10.  By Order entered the same day, Respondent's motion was granted.  ECF No. 11.  On May 21, 2019, the Respondent filed a Corrected Motion to

Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 12. On May 21, 2019, a Roseboro Notice was sent to Petitioner, advising him of his right to respond. ECF No. 13. On May 28, 2019, Petitioner filed a Motion for Failure to Respond in Twenty-Eight (28) Days. ECF No. 14.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.

## II.  Background

### A. The BOP's Residential Drug Abuse Program

The Residential Drug Abuse Program ("RDAP") was created by the BOP pursuant to the Congressional mandate in the Violent Crime Control Law Enforcement Act ("VCCLEA") of 1994. Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance abuse addiction or abuse." 18 U.S.C. § 3621(b). Associated regulations require the inmate to complete and pass a drug abuse education course. 28 C.F.R. § 550.51.

The BOP must provide residential substance abuse treatment for all eligible prisoners, subject to available funding. 18 U.S.C. § 3621(e)(1). A prisoner is "eligible" for RDAP if he is "determined by the [BOP] to have a substance abuse problem," [and]  he is "willing to participate in a residential treatment program." 18 U.S.C. § 3621(e)(B)(i) and (ii). The BOP may, as an incentive for successful completion of RDAP, reduce the inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2).

RDAP has three phases. 28 CFR 550.53. The first phase is a unit-based period and is comprised of a course of individual and group activities provided by a drug abuse specialist in the treatment unit set apart from the general population. Id. Upon successful completion of the

residential component, inmates enter phase two, institution transitional services, where they receive counseling support while transitioning back into the general population of the facility. Id. The final component of RDAP is community-based transitional drug treatment ("TDAT") after an inmate transfers to a Residential Reentry Center ("RRC" or "halfway house") or home confinement. Id. To successfully complete RDAP, an inmate must finish all three phases. 28 C.F.R. § 550.56 (a).

Inmates may be expelled from RDAP because of disruptive behavior related to the program or unsatisfactory progress in treatment. 28 CFR 550.53 (g). Inmates are usually given a formal warning before removal from RDAP, but an inmate may be removed immediately by the institution's Drug Abuse Program Director ("DAPC") without an intervention if it is determined by the treatment team that the inmate's continued presence on the treatment unit will cause "an immediate and ongoing problem for staff and other inmates." Id. Inmates also will be removed from RDAP immediately if a Discipline Hearing Officer ("DHO") finds that they have committed a prohibited act involving alcohol or drugs, violence or threats of violence, escape or attempted escape, or any 100-level series incident. Id.

An inmate who previously declined, withdrew, or failed RDAP may apply for readmission to the program after 90 days. ECF No. 13-3 at p. 35. The treatment team and unit team will decide whether the inmate should be readmitted to RDAP. Id. If readmitted to the same or a different RDAP, the inmate will not receive any credit for prior treatment participation. Id.

## B. Petitioner's Conviction and RDAP History

On July 26, 2016, in the United States District Court for the Eastern District of Kentucky, pursuant to a plea agreement, Petitioner pled guilty to Counts Two and Three of a Second Superseding Indictment: Conspiracy to Distribute Oxycodone, in violation of 21 U.S.C. §846, and

Conspiracy to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. §846. See United States v. Gibson et al., (E.D. Ky. ECF No. 525) (6:15cr15-GFVT-HAI-16). Thereafter, on November 1, 2016, Petitioner was sentenced to 80 months imprisonment on each count, to run concurrently, to be followed by three years supervised release.[1] Id. at ECF Nos. 655, 668. At the time of sentencing, the Court recommended that Petitioner participate in the BOP's 500-hour Residential Drug Abuse Program ("RDAP").[2] Id. at ECF No. 774 at 76, 78.

On November 9, 2017, before being accepted into RDAP, Petitioner read and acknowledged the conditions of participation in the RDAP program. See Declaration of Brendan Eberenz, PSy.D., ABPP, LCDR, U.S. Public Health Service, BOP Drug Abuse Program Coordinator ("Eberenz Decl."), ECF No. 12-2, ¶ 7 at 3 - 4; see also Notice of RDAP Qualification/Agreement to Participate in BOP RDAP, signed by William Yates, ECF No. 12-6.

On January 16, 2018, Petitioner was determined eligible for early release pursuant to 18 U.S.C. § 3621(e). See Eberenz Decl., ECF No. 12-2, ¶ 6 at 3; see also Request for § 3621(e) Offense Review, ECF No. 12-5. Petitioner was designated to FCI Morgantown on January 17, 2018. See Eberenz Decl., ECF No. 12-2, ¶ 5 at 3; see also Inmate History for William Yates ("Inmate History"), ECF No. 12-4. On February 5, 2018, Petitioner enrolled in the RDAP program. See Eberenz Decl., ECF No. 12-2, ¶ 8 at 4; see also Inmate History Drug Programs, ECF No. 12-7. The first time Petitioner met with the treatment team to receive feedback on problematic behaviors was on August 22, 2018. See Eberenz Decl., ECF No. 12-2, ¶ 9 at 4; see also Psychology

---

[1] Petitioner's projected date of release, with good conduct time, is June 21, 2021. See Bureau of Prison's ("BOP") inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited Dec. 17, 2019).

[2] Petitioner did not file an appeal or a motion to vacate under 28 U.S.C. § 2255.

Services RDAP Discharge Note, ECF No. 12-8. He was seen again by the treatment team on October 5, 2018 to review the previous behaviors and address both continuing and new problematic behaviors. Id. He was issued a formal warning and associated treatment intervention. Id. Throughout all of this, Petitioner minimized the seriousness of his actions and downplayed the need for any intervention. Id. Nonetheless, at first, while Petitioner did comply with the requirements of the treatment intervention, as time went by, Petitioner asked his drug treatment specialist ("DTS") if he could discontinue some of the activities on his intervention. Id. Petitioner was told to address this in the group format so his peers could give him feedback on his progress and then the team would decide if discontinuation was appropriate. Id. Petitioner failed to do this and simply discontinued the treatment intervention without permission. Id.

Petitioner continued having difficulty receiving feedback from his peers and treatment staff and failed to complete treatment interventions that were assigned to him by the community. See Eberenz Decl., ECF No. 12-2, ¶ 10 at 4; see also Psychology Services RDAP Discharge Note, ECF No. 12-8. Ultimately, on February 6, 2019, because of his persistent non-compliance, the treatment team decided his expulsion from the program was appropriate. See Eberenz Decl., ECF No. 12-2, ¶ 12 at 5; see also Psychology Services RDAP Discharge Note, ECF No. 12-8.

On March 8, 2019, Petitioner filed a request for an administrative remedy at the institutional level, challenging his RDAP expulsion and seeking reinstatement. See Declaration of Tiffanie Little, BOP Legal Assistant, Mid-Atlantic Regional Office ("Little Decl."), ECF No. 12-9, ¶ 4 at 2 – 3. The request was denied by the Warden on March 27, 2019. Id. at 3. Petitioner did not pursue any further appeal of the denial. Id.

### III. Contentions of the Parties

#### A. The Petition

Petitioner challenges the Bureau of Prison's ("BOP") "wrongful or malicious expulsion" of him from FCI Morgantown's Residential Drug Abuse Program ("RDAP") which would have entitled him to sentence reduction via early release, pursuant to the provisions of 18 U.S.C. § 3621(e). ECF No. 1 at 5. He contends that on February 12, 2019, he was expelled from the program for failing to adequately complete his treatment intervention and for having difficulty receiving feedback from staff and peers. Id. at 5 – 6. He avers that on August 22, 2018, and again on October 10, 2018, he was confronted by RDAP staff regarding a brief period of time in which he was "lacking in participation" because of some outside family matters. Id. at 6.  He insists that he still maintained "full engagement" in his treatment, but admits he had "less physical group participation" due to the pressing family matters. Id. He contends that the only specific issue he experienced during the program was being outside of his cubicle/living space after 10 pm, because his wife's job changed and after that, the only time he could contact her outside of treatment group times was 11:00 p.m.  Nevertheless, he states this was never alleged or cited by RDAP staff as a basis for his expulsion. Id. at 7.

Whether Petitioner has administratively exhausted this claim is unclear: he asserts that his administrative grievance regarding the RDAP issue is "still pending" while simultaneously indicating that the administrative remedy process "will take too long."  Id. at 9.

As relief, he seeks this Court's finding that he should be reinstated to the RDAP program, including a commensurate reinstatement of his § 3621(e) benefits to whatever length of time the Court finds fair. Id. at 10.

**B. <u>Respondent's Motion to Dismiss, or in the Alternative, For Summary Judgment</u>**

The respondent argues that the complaint should be dismissed or summary judgment granted in its favor, because (1) the BOP's determination that Petitioner did not comply with the rules and regulations of the program leading to his expulsion from the program in February, 2019 was a valid exercise of its discretion and (2) Petitioner has failed to exhaust his administrative remedies; while he did file a remedy challenging his RDAP expulsion (Remedy ID # 970372-F1), when it was denied on March 27, 2019, he did not appeal the denial to any other level of administrative review. ECF No. 12-1 at 1 – 7.

**C. <u>Petitioner's Response</u>**

Petitioner's only response to the <u>Roseboro</u> Notice advising him that he had a right to respond to the Respondent's dispositive motion was to file a "Motion for Failure to Respond in Twenty-eight [sic] (28) Days." In that motion, he contends that Respondent's dispositive motion addressing his "routine request" should be "dismissed out of hand" because it was untimely. ECF No. 14.

## IV. <u>Standard of Review</u>

**A. <u>Motion to Dismiss 12(b)(1)</u>**

In ruling on a motion to dismiss under Rule 12(b)(1), no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. See <u>Materson v. Stokes</u>, 166 F.R.D. 368, 371 (E.D. Va. 1996). Instead, the burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982); <u>Mims v. Kemp</u>,

516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  See Fed.R.Civ.P. 12(h)(3).

**B. <u>Motion to Dismiss 12(b)(6)</u>**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Petitioner is proceeding *pro se* and therefore, the Court must liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 – 21 (1972) (*per curiam*); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. <u>Haines</u>, *supra* at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [] not required to construct a party's legal arguments for him." <u>Small v. Endicott</u>, 998 F.2d 411, 417 – 8 (7th Cir. 1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations

are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

## C. **Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of

material fact." <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." <u>Anderson</u>, *supra* at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, *supra* at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, *supra* at 587. "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> *citing* <u>First Ntl. Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968). <u>See</u> <u>Miller v. Fed. Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the  underlying facts must be viewed in the light most favorable to

the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Matsushita</u>, *supra* at 587-88; <u>Anderson</u>, *supra* at 248 - 49.

## V.   <u>Analysis</u>

### A.   <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to any federal law must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e) (a). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002), and is required even when the relief sought is not available. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). Prisoners are required to exhaust their administrative remedies *prior to* the filing of their habeas petitions. <u>McClung v. Shearin</u>, 90 Fed. Appx. 444 (4th Cir. 2004) (federal prisoners must exhaust their administrative proceedings prior to filing § 2241 petitions); <u>United States v. Odiana</u>, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing § 2241); <u>United States v. Mercado</u>, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241).

In <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court held that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full and proper* exhaustion." <u>Woodford</u>, 548 U.S. at 92-94

(emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 02.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq*. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[3] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Exhaustion of administrative remedies as applied to habeas corpus cases is not a requirement imposed by statute. Rather, exhaustion prerequisites in habeas corpus actions arising under § 2241 are judicially imposed. See Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a § 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996); McCallister v. Haynes, 2004 WL 3189469 (N.D. W.Va. 2004).  Because the exhaustion requirement is only judicially imposed

---

[3] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

in habeas proceedings, a court has discretion to waive the requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D. W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir. 1997) cert. denied 521 U.S. 1131 (1997).[4]  A number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5 – 7. Although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions. See Larue at *8.

Here, Petitioner impliedly admits that he did not exhaust his administrative remedies because doing so would be futile based on time constraints. See ECF No. 1 at 9.  Such an admission is grounds for a summary denial of his petition. However, the case has been filed and the matter is ripe for review. Therefore, to dismiss this case at this juncture of the litigation for the failure to exhaust would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits. Nonetheless, even if Petitioner were not required to exhaust administrative remedies before bringing this action, his claim is still without merit and should be denied.

---

[4] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue, 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA, Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions, because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.  See also: Sewell v. Carter, (N.D. W.Va. ECF Nos. 20, 22)(1:13cv120);  Hunter v. O'Brien, (N.D. W.Va. ECF Nos. 33, 37)(5:12cv101).

B. **Petitioner's Eligibility for Early Release Under RDAP**

As previously noted, Petitioner challenges the discretionary decision of prison officials to expel him from RDAP. The undersigned finds this habeas challenge fails for several reasons. Although 18 U.S.C. § 3621 directs the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse," enrollment in the program, and receipt of its benefits, is something consigned to the sound discretion of the BOP. Furthermore, while inmates frequently challenge RDAP enrollment decisions in habeas corpus petitions, they are rarely embraced by the courts. Giannini v. Federal Bureau of Prisons, No. 06-1166, 2010 WL 1427318 (D. Mn. Feb. 12, 2010) (collecting cases). Instead, noting the broad language of the statute in terms of the discretion of prison officials in making decisions regarding enrollment in the RDAP programs, courts have held that: "There is no other language in the statute addressing the eligibility of prisoners for participation in RDAP, thus suggesting that Congress has granted BOP broad discretion in administering RDAP. Lopez v. Davis, 531 U.S. 230 (2001) (upholding BOP regulation that categorically excludes from early release consideration those RDAP participants who had possessed a firearm in connection with a nonviolent offense because statute limits such considerations to 'prisoner[s] convicted of . . . nonviolent offense[s]')." Goren v. Apker, No. 05-9006, 2006 WL 1062904, *5 (S.D.N.Y. April 20, 2006). Therefore, recognizing that "there is no constitutional right to rehabilitation after conviction, courts have held that a petitioner cannot demonstrate a violation of his constitutional rights by the conduct of the BOP when making enrollment decisions in the RDAP program. Kokoski v. Felts, 2007 WL 2821085, *6 (S.D. W.Va. Sept. 27, 2007). Instead, it has been consistently held that in the absence of a showing that the BOP decision was "arbitrary, capricious, or an abuse of discretion," Wells v. Rivera, No. 06-137, 2007 WL 4219002, *8 (N.D. Fla. Nov.

28, 2007), or "[a]bsent an allegation that the BOP violated established federal law, the United States Constitution, or exceeded its statutory authority in making the determination that Petitioner was ineligible for RDAP, the Court does not have jurisdiction to review Petitioner's claims." Johnston v. Thomas, 2010 WL 2574090, *6 (D. Or. June 24, 2010).

Likewise, federal courts have typically denied efforts like those made by the Petitioner to review and reverse discretionary RDAP expulsion decisions under the auspices of the courts' federal habeas corpus jurisdiction. See *e.g.*, Reeb v. Thomas, 636 F.3d 1224, 1226 (9th Cir. 2011); Douvos v. Quintana, 382 Fed.Appx. 119 (3rd Cir. 2009) (affirming denial of preliminary injunction in federal habeas case challenging RDAP expulsion); Clair v. Hendrix, No. 5:18cv20, 2018 U.S. Dist. LEXIS 213910, 2018 WL 6984832 (N.D. W.Va. Nov. 16, 2018) *report and recommendation adopted,* No. 5:18cv20, 2018 U.S. Dist. LEXIS 213909 (N.D. W.Va., Dec. 18, 2018); Richardson v. Joslin, 501 F.3d 415, 416 (5th Cir. 2007); Cantz v. Warden of FCI Shuylkill, No. 1:14cv-2424, 2015 WL 8032530, at *1 (M.D. Pa. Aug. 17, 2015), *report and recommendation adopted*, No. 1:14-cv-2424, 2015 WL 8012922 (M.D. Pa. Dec. 7, 2015); Owens v. Ziegler, No. 5:11-cv-000000864, 2012 WL 3782557, at *1 (S.D. W.Va. Aug. 31, 2012); Anderson v. Thomas, No. CV 10-6377-MO, 2011 WL 2680741, at *1 (D. Or. July 8, 2011); Via v. Lyn, No. 2:10cv101, 2011 WL 573389, at *1 (N.D. W.Va. Jan. 24, 2011); *report and recommendation adopted*, No. 2:10cv101, 2011 WL 573379, at *1 (N.D. W.Va. Feb. 15, 2011); Martin v. Sanders, No. CV 10-2075 AG JCG, 2010 WL 5563579, at *1 (C.D. Cal. Nov. 9, 2010), *report and recommendation adopted*, No. CV 10-2075 AG JCG, 2010 WL 5563850 (C.D. Cal. Dec. 31, 2010); Hugel v. Bledsoe, No. 1:08-cv-1050, 2009 WL 1406252, at *4 (M.D. Pa. May 18, 2009).

Several conclusions are apparent from these cases; first, they repeatedly recognize that federal inmates have no constitutionally protected liberty interest in either RDAP participation or

in a discretionary early release from custody after completion of the RDAP program. See *e.g.*,

Reeb v. Thomas, 636 F.3d at 1129 n.4." Because [an inmate] is not entitled to the reduction, the

BOP's action is not a deprivation of a protected liberty interest and does not affect the duration of

his sentence; he will serve no more time than that of his original sentence." Richardson at 420.

Because the decision to remove an inmate from the RDAP program does not affect the duration of

his sentence in a constitutionally cognizable way, these courts hold that RDAP expulsion claims

may not be redressed through a federal habeas petition. Id.

Other courts have emphasized the fact that "federal courts lacked jurisdiction to review the

BOP's individualized RDAP determination is made pursuant to 18 U.S.C.§ 3621." Reeb, 636 F.3d

at 1128. As one court has observed:

> A convicted person has no constitutional or inherent right to be conditionally
> released before the expiration of a valid sentence. Nor does the Due Process Clause
> confer a right upon an inmate to participate in rehabilitative programs. Statutes or
> regulations governing prison administration can create liberty interests protected
> by the Due Process Clause, but those interests are limited to freedom from
> restraint… [that] imposes atypical or significant hardship on the inmate in relation
> to the ordinary incidents of prison life. The possibility of early release upon the
> completion of RDAP, does not create a protected liberty interest because denial of
> early release does not impose an atypical hardship on a federal prisoner; it merely
> means that the inmate will have to serve out his sentence as expected. Ergo,
> Petitioner's expulsion from RDAP does not implicate due process concern because
> he has no liberty interest in completing the program or in any potential early release
> upon completion of the program.

Martin v. Sanders, No. CV 10-2075 AG JCG, 2010 WL 5563850 (C.D. Cal. Dec. 31, 2010)

(internal quotations and citations omitted).

These principles apply to the instant petition, demonstrating that it should be denied for

several reasons. First, Petitioner does not identify, nor even argue, a sufficient liberty interest

affected by his RDAP expulsion to support a due process claim. Furthermore, given the far-

reaching discretion conferred upon prison officials by § 3621, any due process analysis of this

petition is limited to a determination of whether the actions of prison officials were entirely arbitrary and capricious. Although the Petitioner impliedly suggests that they were, describing his expulsion as "wrongful or malicious," the undersigned disagrees. The record clearly shows that Petitioner was expelled from RDAP due to his problematic behaviors related to the program, his continued failure to be receptive to receiving feedback from treatment staff and peers, and his adamant reluctance to change his behavior and underlying beliefs, which resulted in unsatisfactory progress in treatment. In particular, this excerpt from the RDAP Follow Up-Discharge Note by A. McCabe, PhD/Chief, summarizing the course of Petitioner's conduct after Petitioner was given the formal warning on October 5, 2018, is noteworthy:

> Throughout this process, he appeared to disagree with the seriousness of his actions and continued to downplay the need for an intervention. Nevertheless, he initially complied with the treatment intervention. As time went by, he asked his DTS if he could discontinue some of the activities on his intervention. He was told to address this in the group format so that his peers could give him feedback on his progress and then the team would decide if discontinuation was appropriate. He failed to do this and simply discontinued the treatment intervention without permission. He continues to have difficulty receiving feedback from his peers and treatment staff. He also failed to complete treatment interventions which were assigned to him by the community. His non-compliance with his treatment intervention and continued mollification, justification, and distraction techniques were reviewed with him in a treatment team meeting on 2/6/2019. He was provided feedback by both staff and peers regarding his reluctance to change his behaviors and underlying beliefs. The treatment team considered issuing him another formal warning with treatment intervention, however, he [sic] reluctance to listen to feedback and justification for not completing his previous treatment intervention made an additional intervention seem pointless.

> After the team reviewed the history of RDAP interventions with inmate YATES and his responsiveness to these interventions, the team decided that expulsion from RDAP is the most appropriate treatment intervention at this time. As part of the expulsion, a therapeutically-minded road to RDAP readmission has been detailed in his expulsion paperwork. Should inmate YATES reapply to RDAP he is expected to have participated in the Nonresidential DAP as a means of evidencing preparedness to program. Because inmate YATES struggled with the more intensive RDAP, the less intensive Nonresidential DAP is a good place to build preparedness. A second expectation upon reapplication is completion of a 20-page paper answering "How I plan to approach RDAP differently this time." The

attached 767 Change in Status form provides very brief details of the expulsion and reapplication process. This treatment note goes hand in hand with the Change in Status form. This note should be considered a more detailed account for why expulsion was warranted and the process for reapplication.

ECF No. 12-8.

Accordingly, given the Petitioner's documented history of non-compliance with program requirements spanning over a period of time, his observed failure to apply treatment concepts, his failure to apply himself and expend effort in his own recovery (including his inexplicable failure to avail himself of the opportunity to embark on a path for RDAP readmission, a process that was apparently clearly explained to him at the time of expulsion),  the undersigned finds that the decision to expel him from the RDAP program does not reach a conscious shocking level of arbitrariness, justifying federal habeas corpus relief. See Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3rd Cir. 2002) (applying conscious shocking level of arbitrariness standard of review to discretionary parole denial decision).

Moreover, although the Petitioner alleges that the BOP "seemed to be bias[ed] towards my discharge and [is] looking for any reason to expel Petitioner (myself) from the RDAP Program in a malicious manner[,] [ECF No. 1 at 6], it is apparent that Petitioner is still unable to accept his own role in failing to do the work toward making progress toward the stated goals of RDAP. Accordingly, Petitioner is reminded of the dictate of 28 CFR 550.53(g), which specifically provides that "[i]nmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment." Id. at § 550.53(g)(1).

Relief should be denied.

## VI. <u>Recommendation</u>

Based on the foregoing, the undersigned recommends that Respondent's Corrected Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 12] be **GRANTED** and Petitioner's § 2241 petition [ECF No. 1] be **DENIED** and **DISMISSED with prejudice.**

Further, the undersigned **RECOMMENDS** that Petitioner's pending motion to expedite [ECF No. 2] and Motion for Failure to Respond in Twenty-Eight (28) Days [ECF No. 14] both be **DENIED as moot**.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985);

Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court.  The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: December 19, 2019

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE